**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 8, 2016**

# In the Court of Appeals of Georgia

A16A0374. NATEGHI v. BEAUFORD PROPERTIES, LLC et al.    JE-015

ELLINGTON, Presiding Judge.

This appeal arises out a declaratory judgment action by lessee Mehdi Nateghi, who sought to affirm the validity of an alleged agreement to extend the term of his lease for the premises located at 887 Marietta Street in Atlanta (the "Property"). The jury found for defendants Beauford Properties, LLC ("Beauford"), the original owner and lessor of the Property, and 887 Marietta, LLC ("Marietta"), the subsequent purchaser of the Property, on the issue of whether there was an agreement between Nateghi and Beauford to extend the terms of the lease. The jury, in a special verdict, also found for Beauford and Marietta on their counterclaims, and awarded Marietta, as pertinent to this appeal, $312,286.25 in damages for lost profits caused by Nateghi's wrongful occupancy of the Property, and $97,319.64 in attorney fees. On

appeal, Nateghi contends that the trial court erred in denying his motions in limine, for a directed verdict, and for a judgment notwithstanding the verdict. He also contends the court erred in awarding attorney fees. For the reasons set forth below, we find that the trial court erred in denying Nateghi's motions for a directed verdict and for a judgment notwithstanding the verdict on the issue of Marietta's damages for lost profits, and we direct that such damages be stricken from the judgment. However, we affirm the award of attorney fees. Accordingly, we reverse in part, affirm in part, and remand the case with direction.

Construed to uphold the jury's verdict,[1] the evidence shows that Beauford leased the Property to Nateghi under a Commercial Lease Agreement (the "Lease") for a term which, as renewed, extended from October 10, 2007, through September 30, 2011. Nateghi negotiated the Lease with Howard Perling, a real estate broker. On September 30, 2010, Nateghi sent an e-mail to Perling asking that the rent be reduced to $1,800 per month. Perling, who was then managing the Property for Beauford,

---

[1] See *Esprit Log & Timber Frame Homes, Inc. v. Wilcox*, 302 Ga. App. 550 (691 SE2d 344) (2010) ("[A]fter rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict.") (citation and punctuation omitted).

2

forwarded the e-mail to Beauford, which instructed Perling to "stay on [Nateghi] and try to get the money[.]"

According to Nateghi, he signed and personally hand-delivered a letter, dated October 18, 2010, to Perling in which he exercised a purported option, the terms of which had been orally communicated to him by Perling, to extend the Lease for an additional three years at $1,800 rent per month. Perling testified that he never received this letter, that he never communicated to Nateghi an offer to extend the Lease term, and that he was not authorized by Beauford to extend the Lease. Two officers of Beauford also testified that Beauford never offered to change the terms of the Lease.

From October 2010 through September 2012, Nateghi tendered rent checks to Beauford in the amount of $1,800. Beauford sold the Property to Marietta in September 2012. In early October 2012, Nateghi received a letter from Marietta which informed him that the Lease had expired on September 30, 2011, that he occupied the Property as a tenant at will, and that the letter served as 60 days' notice of the termination of his tenancy. After receiving the letter from Marietta, Nateghi filed a petition for declaratory judgment against Beauford and Marietta seeking an order affirming the validity of the agreement outlined in Nateghi's letter of October

3

18, 2010, and his good faith performance thereunder. Beauford answered and counterclaimed for past due rent and other charges under the Lease. Marietta answered and counterclaimed for, among other things, damages caused by Nateghi's continued occupancy of the Property.[2]

The trial court and the parties agreed to bifurcate the trial. Following the initial phase of the trial, the jury rejected Nateghi's contention that there was an agreement between Beauford and Nateghi to extend the term of the Lease for three years beyond its specified expiration date of September 30, 2011.

Following the second phase of the trial, the jury found in a special verdict that, among other things, Marietta suffered damages caused by Nateghi's wrongful occupancy of the Property in the amount of $312,286.25 for lost profits.[3] The jury also found that Marietta was entitled to recover attorney fees. The trial court entered

---

[2] Marietta later filed a motion for summary judgment, which the trial court denied. This Court granted Marietta's application for an interlocutory appeal from the trial court's order denying its motion for summary judgment in our Case No. A14I0047. That appeal, Case No. A14A1488, was subsequently dismissed by this Court.

[3] The jury also found, as damages caused by Nateghi's wrongful occupancy of the Property, $49,995.95 for unpaid rent and other contractual damages, $2,624.79 for interest on the unpaid rent and other contractual damages, and $218,309.92 for other development costs.

4

final judgment in accordance with the jury's verdict, as well as on Beauford's post-trial motion for attorney fees, and Nateghi appeals.[4]

1. In related claims of error, Nateghi contends that the trial court erred (a) in denying his motions for directed verdict on Marietta's claim for damages for

---

[4] The trial court entered an order designated as its final order and judgment on July 9, 2015, and entered an amended final order and judgment on July 10, 2015. Nateghi identified only the July 9, 2015 order in his notice of appeal. Marietta contends that, because the amended order entered July 10, 2015 is the final order in the case and is not referenced in Nateghi's notice of appeal, this Court must dismiss this appeal. We disagree. "Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from . . . , the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify definitely the judgment appealed[.]" OCGA § 5-6-48. It is apparent from the notice of appeal and his enumeration of errors that Nateghi appeals from the final order entered below, and his reference to the order entered July 9, 2015, rather than the order entered July 10, 2015, does not subject his appeal to dismissal. See *Bagwell v. Henson*, 124 Ga. App. 92 (183 SE2d 485) (1971) (The incorrect designation of the date of the judgment in the notice of appeal did not render the appeal subject to dismissal.).

anticipated or lost profits and for judgment notwithstanding the verdict,[5] and (b) in denying his motion in limine to exclude evidence of Marietta's lost profits.

(a) After Marietta presented its evidence in the second phase of the trial, Nateghi moved for a directed verdict on the ground that the evidence was too speculative to support Marietta's claim for damages for lost profits. Following the trial, Nateghi moved for judgment notwithstanding the verdict.

> In determining whether the trial court erred by denying [Nateghi's] motion for a directed verdict and motion for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

---

[5] Marietta contends that Nateghi's claims that the trial court erred in denying his motions for a directed verdict and for a judgment notwithstanding the verdict should be deemed abandoned because, in his appellate brief, he argues as to these claims of error only that the evidence of lost profits was insufficient because the evidence was inadmissible. However, Nateghi presented his legal and factual contentions as to the speculative nature of the lost profits evidence in arguing that the trial court erred in denying his motion in limine, and we understand those arguments to also apply to his claim that the trial court erred in denying his motions for a directed verdict and for a judgment notwithstanding the verdict.

(Citation, punctuation, and footnote omitted.) *Wolf Camera v. Royter*, 253 Ga. App. 254, 255 (1) (558 SE2d 797) (2002).

So viewed, the evidence showed that Marietta purchased the Property with the intent to operate a restaurant thereon. Marietta's principals had previously opened a restaurant at another location. When Marietta acquired the Property it also bought an adjacent tract because, as explained by John Amend, Marietta's principal, "one wasn't available without the other." The Property had a building with heat, electricity, gas, and running water. The building on the adjacent tract had none of those things.

After it became clear to Marietta in December 2012 that it would not have access to the Property within a reasonable period of time, it decided to develop the adjacent building, rather than the Property. Marietta opened its restaurant on the neighboring site on July 2, 2014. Amend testified that, but for Nateghi's decision to hold over on the Property, it would have taken six months to develop the Property for purposes of opening its restaurant and not the almost two years that was required to develop the adjacent tract.

As to the damages Marietta claimed for lost profits, Amend testified:

I've looked at the revenue that we generated over the last year and I looked at the revenue that we generated at the location. I do have a lot

7

of experience in what restaurants should be doing in terms of their profit, and I took that at 20 percent. I believe it's over 15 months. Again, it's in my notes which I think you have. From a simple standpoint, that's about what we would have done in terms of profit during that time. Part of it is that I would have been six months in development. Instead of taking almost two years, it was a year and ten months. So that difference [in profit] is what I tried to capture.

As a general rule, "the expected profits of a commercial venture are not recoverable as they are too speculative, remote, and uncertain." *Johnson County Sch. Dist. v. Greater Savannah Lawn Care*, 278 Ga. App. 110, 112 (629 SE2d 271) (2006). See *SMD, L.L.P. v. City of Roswell*, 252 Ga. App. 438, 441 (2) (555 SE2d 813) (2001) (accord). As an exception to this rule, "when the type of business and history of profits make the calculation of profits reasonably ascertainable, lost profits may be recovered. Thus, generally speaking, lost profits may be recovered by a business only if the business has a proven track record of profitability." (Punctuation and footnotes omitted.) *EZ Green Assocs., LLC v. Georgia-Pacific Corp.*, 331 Ga. App. 183, 187-188 (2) (770 SE2d 273) (2015). Further, "[i]n order to establish lost profits, the jury must be provided with information or data sufficient to enable them to estimate the amount of the loss with reasonable certainty. Generally speaking, this means that they must be provided with figures establishing the business's projected

8

revenue as well as its projected expenses." (Citation and punctuation omitted.) *Pounds v. Hosp. Auth.*, 197 Ga. App. 598, 599 (1) (399 SE2d 92) (1990) (Exclusion of evidence of revenues could not have been harmful in light of plaintiff's failure to prove his expenses, which precluded the determination of lost profits.). Compare *Bennett v. Smith*, 245 Ga. 725, 727 (267 SE2d 19) (1980) (Where expenses remained unchanged during a work stoppage, the jury would have been authorized to award lost revenues as damages without deducting production expenses therefrom.).

Here, the evidence showed that Marietta established a restaurant at essentially the same location as the Property, and that its principals had established another restaurant at a second location. In calculating the amount of lost profits attributable to Nateghi's having held over on the Property, Amend assessed "revenues generated," but he did not testify that there was a record of profits at either of the restaurant locations, or by Marietta's business. Rather, according to Amend, he had "experience in what restaurants should be doing in terms of profits" and he "took that at 20 percent." Nor did Marietta present evidence of projected revenues and expenses for a restaurant operating at the Property during the time period that Marietta contends that its profits were lost. Generally, "to recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such

9

profits." (Citation and punctuation omitted.) *Bldg. Materials Wholesale v. Triad Drywall*, 287 Ga. App. 772, 776 (2) (653 SE2d 115) (2007) (Where testimony showed the plaintiff's history of profits, as a percentage of contract amounts, as well as the amount of revenues lost as a result of defendant's breach of contract, the plaintiff was nevertheless required to put up evidence of its anticipated expenses to allow recovery of lost profits for a transaction that was never completed.). Marietta's evidence, which failed to demonstrate that its business had a proven record of profitability and lacked a showing of anticipated revenues and expenses for the restaurant it had intended to operate on the Property, was legally insufficient for it to recover lost profits as an element of damages.

> The speculations, guesses, estimates of witnesses, form no better basis of recovery than the speculations of the jury themselves. Facts must be proved, data must be given which form a rational basis for a reasonably correct estimate of the nature of the legal injury and of the amount of the damages which resulted from it, before a judgment of recovery can be lawfully rendered.

(Citation and punctuation omitted.) *Tri-State Systems, Inc. v. Village Outlet Stores, Inc.*, 135 Ga. App. 81, 85 (217 SE2d 399) (1975) (Witness's assertion that his business was damaged in the amount of $40,000 was without value in the absence of

statements or records reflecting the business's previous and present profits or losses.).

As the evidence of Marietta's lost profits amounted to no more than speculation, the

trial court erred in denying Nateghi's motions for a directed verdict and for a

judgment notwithstanding the verdict as to Marietta's claim for damages for lost

profits.[6]

(b) Nateghi also contends that the trial court erred in denying his motion in

limine to exclude lost profits evidence. We find this claim of error to be moot because

we have ordered the award of damages for lost profits stricken from the judgment in

Division 3, infra, and because there is no reasonable likelihood that the evidence of

lost profits otherwise affected the jury's verdict.[7]

---

[6] Nateghi also references "insufficient evidence of lost profits and building costs" within his argument that the trial court erred in denying his motion for a judgment notwithstanding the verdict. Pretermitting whether this isolated reference to "building costs" might be interpreted as an argument that the evidence was insufficient to support the jury's award of damages for development costs, such an argument, if intended, is unsupported by reference to the record or citation to legal authority, and is abandoned. See Court of Appeals Rule 25 (c) (2).

[7] See *Harris v. Tatum*, 216 Ga. App. 607, 608 (1) (a) (455 SE2d 124) (1995) (finding grant of motion for directed verdict as to issue of informed consent rendered moot claim of error as to the trial court's denial of appellant's motion in limine because appellant failed to show "any fair risk exists that the jury's subsequent verdict in favor of plaintiffs was contributed to by the denial of their motion in limine as to informed consent.").

11

2. Nateghi further contends that, because the jury's award of attorney fees was "derivative," the trial court erred in awarding attorney fees.[8] Nateghi has not cited to any legal authority to support this claim of error, and his argument does not set forth a cogent basis for reversal. Therefore, we deem it abandoned under our Rule 25 (c) (2). See *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (legal argument requires the application of the appropriate law to the relevant facts).

3. Where a motion for directed verdict is erroneously denied, the appellate court "may direct that judgment be entered below in accordance with the motion or may order that a new trial be had, as the court may determine necessary to meet the ends of justice under the facts of the case." OCGA § 9-11-50 (e). Further, "[t]he whole judgment will not be set aside because of error as to a part thereof, where it can be determined from the record how much is erroneous."(Citation and punctuation omitted.) *Scott v. Thompson*, 193 Ga. App. 487, 488 (2) (388 SE2d 371) (1989). Because that portion of the jury's award attributable to damages for lost profits is ascertainable from the special verdict form, we conclude that a new trial is not required. We direct that the award of damages for lost profits in the amount of

[8] It is unclear if Nateghi intends to challenge the award of attorney fees to both Marietta and Beauford. Nateghi does not identify the basis for either fee award. He also fails to specify the claims for which he contends the attorney fees are derivative.

$312,286.25 be stricken from the judgment, which otherwise stands affirmed. See, e.g., *Norfolk & Dedham Mut. Fire Ins. Co. v. Cumbaa*, 128 Ga. App. 196, 200 (3) (196 SE2d 167) (1973) (ordering that the award of attorney fees and penalties, the directed verdict as to which the trial court erroneously denied, be stricken from the judgment).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Mercier, J., concurs. Branch, J., concurs in judgment only.*