## 49707. KING v. THE STATE.

CLARK, Judge.

This appeal is from a conviction in the State Court of Gwinnett County for the offense generally described as "driving too fast for conditions." Appellant seeks a reversal on the basis of four enumerations of error. Three of these deal with overruling of his in limine motions. The final enumeration contends that "the trial court erred in finding the appellant guilty in the absence of competent evidence to support such a finding."

1. The trial court was correct in denying the threshold motion which sought to dismiss the case for lack of jurisdiction. The pertinent portion of the accusation specifically charged defendant with committing a "misdemeanor" in that on January 9, 1974, he operated a motor vehicle upon a named public highway in Gwinnett County "at a speed greater than was reasonable and prudent under the conditions and having due regard to the actual and potential hazards then existing so as to avoid colliding with a person, vehicle, or

other conveyance." This language is substantially that of Section 48 of the Uniform Traffic Act enacted in 1953 and appearing in the Annotated Code as § 68-1626 (a). This conduct has been legislatively declared to be a misdemeanor offense. Code Ann. § 68-9926 (Ga. L. 1953, Nov. Sess., pp. 556, 565). Jurisdiction therefore was properly in the court below. Code Ann. § 24-2106a (Ga. L. 1970, pp. 679, 681).

2. Another in limine motion which was properly overruled sought a dismissal of the case "for failure of the summons to comply with the requirements of Ga. Code Ann. § 68-1632." This Annotated Code Section was enacted as Section 54 of the 1953 Uniform Traffic Law. In Ga. L. 1953, Nov. Sess., pp. 556, 581, it is stated that "In every charge of violation of any speed regulation in this Act the accusation, indictment, or complaint, also the summons or notice to appear, shall specify the speed at which the defendant is alleged to have driven, also the lawful speed applicable within the district or at the location."

A reading of the entire 1953 Uniform Traffic Law which is contained in the Annotated Code as Chs. 68-15, 68-16 and 68-17, shows that in some sections definite speed limits are specified whereas in other sections there are general provisions but an absence of specified limits. An example of this variation appears in Section 48 which has been codified as § 68-1626. There, in paragraph (a) is stated the general provision under which appellant was charged; then, in paragraph (b) are declared specified maximums of speed dependent upon location, hour of the day, type of highway, and kind of vehicle. It is therefore apparent that the provisions of Article 54 appearing in the Annotated Code as § 68-1632 were intended to apply only to those portions of our motor vehicle statutes wherein a specific speed limit is stated and not to those parts which use general language.

Our interpretation is in accord with established legal principles governing construction of statutes. We deem it sufficient to cite only two cases as illustrative, one from our state's early judicial history and the other of recent vintage.

Prior to the creation in 1845 of our Supreme Court,

Georgia's nisi prius judges recognized the need for uniformity in the administration of law and creation of a source for local precedents. Thus, in 1824, a famed Savannah jurist, T. U. P. Charlton (1779-1835), compiled the first volume of Georgia court decisions. In 1838, his illustrious son, R. M. Charlton (1807-1854), followed his father's example with a similar collection. Both of the Charlton books were limited to cases decided in our Eastern Judicial Circuit. The third volume[1] of pre-Supreme Court rulings, compiled by George M. Dudley in 1835, represented decisions selected from the then ten circuits at the semi-annual convocations of the "Judges of the Superior Courts of Law and Chancery" under chairmanship of William H. Crawford (1772-1834) who had been U. S. Senator, Secretary of the Treasury, Minister to France, and his party's nominee for President. Their stated aim was to provide "the united wisdom of the whole Georgia Bench." (See 1907 Ga. Bar Assn. Reports, p. 91).

In R. M. Charlton, 324, appears the case of *Forsyth v. Marbury*. There at page 334 we find the following directive: "Statutes are not always to be construed according to the letter. General expressions may be sometimes restrained; and the statute made to bear a construction reasonable and convenient, and comporting with the probable intention of the Legislature."

Our modern guidepost is *Board of Tax Assessors v. Catledge*, 173 Ga. 656 (3) (160 SE 909): "In construction of a statute a court may decline to give a legislative act such construction as will attribute to the General Assembly an intention to pass an act which is not reasonable, or as will defeat the purpose of the proposed legislation. In the exercise of this power a court may avoid a portion of the enactment and preserve the remainder."

3. Appellant's second enumeration of error was

---

[1]The importance of these compilations is shown by their republication in 1907 as a part of Van Epps Annotations and again in 1974 as "Preliminary Georgia Reports Volume." Recognition of their value to Bench and Bar is confirmed by Shepard's Citations.

limited to the applicability of Code Ann. § 68-1632. Our jurisdiction is limited to consideration of the legal points raised by enumerations of error. *Hess Oil &c. Corp. v. Nash,* 226 Ga. 706, 709 (177 SE2d 70); *Phelps v. State,* 130 Ga. App. 344 (3) (203 SE2d 320); *Craig v. State,* 130 Ga. App. 689 (6) (204 SE2d 307). Accordingly, we do not attempt to determine if the statute is too vague or indefinite for penal enforcement as occurred in *Hayes v. State,* 11 Ga. App. 371 (75 SE 523). There our court ruled that somewhat similar general language in Ga. L. 1910, p. 92, was too uncertain and indefinite in its terms to be capable of criminal enforcement. It should be noted, however, that in *Teague v. Keith,* 214 Ga. 853 (1) (108 SE2d 489), the general speed restrictions of Code Ann. § 68-1626 (a) and (c) were upheld as to civil cases.

4. Appellant's third enumeration attacks the trial court's refusal to remand the case to the recorder's court for commitment hearing. This was not error because the Act creating the Gwinnett County Recorder's Court (Ga. L. 1972, p. 3125, § 23) expressly gives the recorder the power "on his own motion and within his sole discretion" to bind over to the state or superior court any case "where the offense would constitute a violation of a State Law."

5. We find no merit in appellant's final enumeration. Evidence was introduced that defendant was driving approximately 50 to 55 miles per hour down hill on a wet road; that, due to patches of fog, visibility was reduced to 75 to 90 feet; and that a speed of 40 miles per hour would have been too fast for conditions. The evidence supports the verdict.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 10, 1974 — DECIDED OCTOBER 31, 1974 — REHEARING DENIED DECEMBER 2, 1974.

Joseph H. King, Jr., *pro se.*
*John F. Lester, Solicitor,* for appellee.